COMMONWEALTH of Pennsylvania, Appellee

v.

Marcus GIBBS, Appellant.

Superior Court of Pennsylvania.

Submitted May 26, 2009.

Filed Sept. 14, 2009.

Bruce G. Sandmeyer, Erie, for appellant.

Carrie C. Munsee, Asst. Dist. Atty., Erie, for the Com., appellee.

BEFORE: SHOGAN, FREEDBERG and HUDOCK [*], JJ.

OPINION BY FREEDBERG, J.:

¶ 1 Appellant, Marcus Gibbs, appeals from the judgment of sentence entered on August 1, 2008, by the Court of Common Pleas of Erie County. After review, we affirm.

¶ 2 The relevant facts and procedural history of this matter, which are taken from the trial court's opinion filed November 10, 2008, are as follows.

On August 14, 2007, members of the Erie Police Department were conducting an undercover investigation of Appellant's residence, located at 602 East 13th Street, Apartment 1, Erie, Pennsylvania. Police had received information from a confidential informant, John Poole ("Poole"),[3] that drugs could be purchased at Appellant's residence. As a

result, the police orchestrated a controlled buy at that location.

On August 14th, Poole telephone Mr. Billie Joe Williams ("Williams")[4], to arrange a purchase of crack cocaine. At approximately 9:00 p.m., Williams called Shanti Israel Bayette ("Bayette"), in order to obtain one half ounce of crack cocaine to deliver to Poole for $700.00. Williams and Bayette agreed (at Bayette's directive) to meet at Appellant's house to consummate the sale to Poole. After his telephone conversation with Williams, Poole drove Williams to Appellant's residence. While Poole remained in the vehicle, Williams went to Appellant's home and spoke with Appellant on Appellant's porch.[5] Because Bayette was not yet at the residence, Williams returned to Poole's vehicle and waited. Approximately 20 minutes later, Bayette arrived and entered Appellant's home. Present were Bayette, some "kids", and Appellant. Williams entered the residence and obtained cocaine from Bayette. Because Bayette was "fronting" him the drugs, he did not have to pay Bayette at that time. *At all times, Appellant was present at the residence.* Williams left in Poole's vehicle. Moments later, police stopped the vehicle and arrested Williams. (This occurred at approximately 9:45 p.m.). They recovered 13.7 grams of crack cocaine from behind the passenger's seat.

After Williams was arrested, Erie Police Department Lieutenant Michael Nolan applied for a search warrant for Appellant's residence. However, concerned that evidence might be destroyed, he decided to secure the residence with assistance from other officers. To do so, officers entered onto the Appellant's porch intending to knock on the door and engage the occupants in conversa-

* Retired Senior Judge specially assigned to the    Superior Court.

tion. However, before they could do so, Appellant opened the door. From their vantage point on the porch, police observed stacks of cash and bags of apparent crack cocaine on the kitchen counter within two or three feet of Appellant. They also saw Bayette standing by a countertop holding a large amount of U.S. currency. (He dropped the money once he saw the police).[6] Appellant was located two to three feet from these items. Upon making these observations, the police entered the residence and secured it and the occupants while they awaited the search warrant. Once the warrant was obtained, police recovered $5,177.00 from the countertop and floor area, $540.00 from Appellant, three stolen handguns from a bedroom, two bags of crack cocaine (2.1 grams and 0.25 grams, respectively), and sandwich baggies.[7]

---

[3] Mr. Poole's identity was disclosed at time of trial.

[4] Williams, a co-defendant, pled guilty and agreed to cooperate. He is related to Mr. Poole.

[5] Williams testified that he did not discuss the drug transaction with Appellant. However, he said he told Appellant he was going to meet Bayette at Appellant's house.

[6] Williams testified that drugs, money, etc. were not on the countertop when Bayette gave him the 13.7 grams of crack cocaine. Given the sequence of events, this Court found that testimony incredible.

[7] At trial, Appellant's 14 year old brother, Jonathan Keys, testified that at the time of

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

3. 18 Pa. Cons.Stat. Ann. § 903.

4. 35 P.S. § 780–113(a)(32).

5. 18 Pa. Cons.Stat. Ann. § 3925(a).

6. Appellant's possession of a controlled substance count merged into the possession with

the search he was residing with Appellant and owned the confiscated firearms. This Court found his testimony incredible.

Trial Court Opinion filed 11/10/08 at 1–3.

¶ 3 On December 13, 2007, Appellant filed a motion to suppress alleging the evidence seized was the product of an illegal entry in violation of the United States and Pennsylvania Constitutions. Appellant claimed that the police did not have a warrant to enter upon the front porch and that they failed to establish exigent circumstances. A hearing took placed on January 30, 2008. On March 4, 2008, the trial court issued an opinion denying the motion.

¶ 4 A non-jury trial on the charges against Appellant and his co-defendant took place on June 24, 2008. Appellant was found guilty of possession with intent to deliver,[1] possession of a controlled substance,[2] conspiracy,[3] possession of drug paraphernalia,[4] and three counts of receiving stolen property.[5] On August 1, 2008, Appellant was sentenced to the mandatory minimum of sixty (60) to one hundred and twenty (120) months of incarceration on the possession with intent deliver count to be served consecutively to Appellant's sentence for a previous drug conviction; and a sentence of eighteen (18) to thirty-six (36) months of incarceration on the first of the receiving stolen property counts to be served consecutively to the possession with intent to deliver count.[6] This resulted in an aggregate sentence of seventy-eight (78) to one hundred and fifty-six (156)

intent to deliver for sentencing purposes. His sentences on the conspiracy and possession of drug paraphernalia were to be served concurrently with the possession with intent to deliver count, and the remaining two counts of receiving stolen property were to be served concurrently with the first count of receiving stolen property.

months of incarceration to be served consecutively to the sentence Appellant was then serving. Appellant filed a post-sentence motion on August 11, 2008, which was denied by order of that same day. Appellant was ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Accordingly, Appellant filed the 1925(b) statement, and the trial court subsequently issued its opinion.

¶ 5 On appeal, Appellant raises the following issues for our review:

1. Should the evidence of the police search have been suppressed?

2. Was the evidence presented by the Commonwealth insufficient to sustain the conviction of the charges in the case?

3. Was the verdict against the weight of the evidence because the Commonwealth's evidence did not show Appellant liable for drugs delivered by the co-defendant?

4. Was the sentence excessive?

Appellant's Brief at 7.[7]

■■■ ¶ 6 Appellant first claims that the trial court erred in denying his motion to suppress. The applicable standard of review is as follows:

[i]n reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177, 178–79 (1992) (citation omitted).

■■■ ¶ 7 Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1 § 8 of the Pennsylvania Constitution.[8] *Id.* at 1255, 609 A.2d 177. These constitutional protections have been extended to the curtilage of a person's home. *Id.* at n. 1. Curtilage has been defined in constitutional context as in "the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id.* (citation omitted).

■■■ ¶ 8 Appellant argues that the front porch constituted curtilage and thus the police viewed the contraband from an unlawful vantage point.[9] The Commonwealth argues that the porch did not constitute curtilage. Further, the Commonwealth relies on the plain view doctrine to justify the seizure of the evidence. Under the plain view doctrine if an officer views

---

7. We have reordered the issues in Appellant's brief.

8. Appellant does not specify in his brief whether he is challenging the allegedly illegal entry under the Pennsylvania or United States Constitution. However, for purposes of our analyses it does not matter, as our Courts have applied the same standard. *See*

*Commonwealth v. Lee,* 972 A.2d 1, 3–4 (Pa.Super.2009) (analyzing the issue of a warrantless search and seizure of a home confluently).

9. We note that Appellant does not contend that it was not immediately apparent to the officers that the contraband was incriminating.

"from a lawful vantage point" an item the incriminating nature of which is immediately apparent, he may seize it *Commonwealth v. English,* 839 A.2d 1136, 1139 (Pa.Super.2003).

¶ 9 There is no evidence in the record, and Appellant has provided no legal support for his claim that the porch constituted curtilage. The evidence established that there was no front yard or other enclosed space preceding or surrounding the porch; rather, the porch "butt[ed] up" against the sidewalk. N.T. 1/30/08 at 12. There was no gate blocking entry to the porch and nothing else which would indicate that the porch was closed to members of the general public. *Id.* at 12, 17, 18, 22. Further, the porch was an empty, unenclosed, concrete slab that was used by deliverymen and visitors to the apartment. *Id.* at 17, 18, 22. Lastly, the evidence reflects that, within minutes of the police entry onto the porch, the porch was also used by a pizza deliveryman and a couple of individuals attempting to purchase contraband. *Id.* at 18.

¶ 10 The issue of whether a front porch constitutes curtilage has not been addressed by the Pennsylvania Appellate Courts. Our sister states which have addressed the issue are divided. However, even those courts which have found that a front porch constitutes curtilage have generally found no Fourth Amendment violation where the porch in question was used by the general public. *See, U.S. v. Titemore,* 437 F.3d 251, 259 (2d Cir.2006) (finding no reasonable expectation of privacy in deck attached to home where it constituted part of the principal entryway); *Murphy v. Gardner,* 413 F.Supp.2d 1156, 1167–68

(D.Colo.2006) (unenclosed front porch which contained homeowner's mailbox and newspaper rack did not constitute curtilage for Fourth Amendment purposes); *Davis v. State,* 907 N.E.2d 1043, 1049–50 (Ind.App.2009) (noting that police entry onto private property does not violate the Fourth Amendment when the police have a legitimate investigatory purpose and limit their entry to places that visitors would be expected to go like porches, as the Fourth Amendment does not protect items or activities which are knowingly exposed to the public); *State v. Brisban,* 809 So.2d 923, 927–29 (La.2002) (no Fourth Amendment violation where police, while standing on a front porch, observed defendant cutting crack cocaine; while front porch was curtilage, defendant had only a limited expectation of privacy because it could have been approached by anyone). Thus, we find that the record supports the suppression court's conclusion that the officers viewed the contraband from a lawful vantage point.[10]

¶ 11 Appellant next claims that the evidence was insufficient to sustain his convictions. Our standard for reviewing the sufficiency of the evidence is well settled.

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note

---

**10.** Appellant does not challenge the subsequent warrantless entry into the home. While Appellant does argue that exigent circumstances did not exist, that argument is solely based upon his conclusion that the police required exigent circumstances to enter onto *the porch* because it was constitutionally protected. Appellant's Brief at 20–22. Nowhere does Appellant discuss the subsequent entry into the home or argue that exigent circumstances did not justify the police entry into the residence.

that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Bostick,* 958 A.2d 543, 560 (Pa.Super.2008) (quoting *Commonwealth v. Smith,* 956 A.2d 1029, 1035–36 (Pa.Super.2008)).

■ ¶ 12 In a recent decision, *Commonwealth v. Williams,* 959 A.2d 1252 (Pa.Super.2008), this Court reiterated that when challenging the sufficiency of the evidence on appeal, the Appellant's 1925 statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. *Williams,* 959 A.2d at 1257 (quoting *Commonwealth v. Flores,* 921 A.2d 517, 522–23(Pa.Super.2007)). Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. *Id.,* at 1258 n. 9. Here, Appellant not only failed to specify which elements he was challenging in his 1925 statement, he also failed to specify which convictions he was challenging. While the trial court did address the topic of sufficiency in its opinion, we have held that this is "of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim." *Id.* at 1257 (quoting *Flores* at 522–23).

¶ 13 Further, Appellant's sufficiency of the evidence argument is underdeveloped. Appellant does not state in his brief, which of the convictions he is challenging. He does not set forth the elements of the crimes he was convicted of and does not argue which specific elements were not met. While Appellant does set out the standard of review for sufficiency of the evidence claims, his argument is otherwise without citation to any legal authority. For theses reasons, the claim is waived.

■ ¶ 14 Even if the sufficiency claim was not waived for the reasons discussed above, it would still be subject to dismissal. Appellant's contention is that the finder of fact should have credited the testimony of one particular witness rather than crediting the testimony of the remainder of the witnesses. An argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the

sufficiency of the evidence. *Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa.Super.2007) (claim that the jury should have believed Appellant's version of the event rather than that of the victim goes to the weight, not the sufficiency of the evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713–14 (Pa.Super.2003) (a review of the sufficiency of the evidence does not include an assessment of the credibility of testimony; such a claim goes to the weight of the evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super.1997) (credibility determinations are made by the finder of fact and challenges to those determinations go to the weight, not the sufficiency of the evidence). Thus, Appellant's asserted sufficiency of the evidence claim is, in fact, a weight of the evidence claim.

¶ 15 Appellant next claims his convictions were against the weight of the evidence.

When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa.Super.2004) (citation omitted). "Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003). "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.*

*Commonwealth v. Trippett*, 932 A.2d 188, 198 (Pa.Super.2007).

¶ 16 There was no abuse of discretion by the trial court. Appellant essentially asks the Court to reassess the credibility of the witnesses. However, it is well settled that the Court cannot substitute its judgment for that of the trier of fact. *Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa.Super.2008). Further, the finder of fact was free to believe the testimony of certain of the Commonwealth's witnesses and to disbelieve the testimony of another. *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Lee*, 956 A.2d 1024, 1029 (Pa.Super.2008) (citation omitted). Here, the fact finder found Williams' testimony that Appellant was not present during the drug transaction and that the drugs and money were not out on the kitchen counter to be incredible in light of Williams' own testimony that Appellant answered the door the first time Williams' knocked. The trial court further found that this testimony was not credible in light of the police testimony that when they went onto the porch a few minutes later, Appellant opened the door and they observed drugs and money on the kitchen counter within two feet of Appellant. The denial of the weight of evidence claim was not an abuse of discretion.

¶ 17 Appellant next purports to challenge the discretionary aspects of his sentence. Preliminarily, we note that "[i]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an

objection to a discretionary aspect of a sentence is waived." *Commonwealth v. McAfee,* 849 A.2d 270, 275 (Pa.Super.2004) (citation omitted), *appeal denied,* 580 Pa. 695, 860 A.2d 122 (2004) (table). Appellant timely filed a motion for reconsideration of sentence, which challenged the discretionary aspects of his sentence. *See McAfee,* 849 A.2d at 275.

¶ 18 In his 1925 statement, Appellant asserts that the mandatory minimum sentence should not have been applied because "the appellant should not have been held liable for drugs delivered to Billy Jo Williams by co-defendant because Williams stated he was not present." Appellant's 1925 Statement at ¶ 10.

¶ 19 It is well settled that a challenge to the application of a mandatory minimum sentence is a challenge to the legality of sentence not the discretionary aspects of sentence. *Commonwealth v. McKibben,* 977 A.2d 1188, 2009 WL 2045159 at *2 (Pa.Super.2009). Further, the right to appeal the discretionary aspects of a sentence is not absolute. *See Commonwealth v. Pollard,* 832 A.2d 517, 525 (Pa.Super.2003). When an appellant challenges the discretionary aspects of the sentence imposed, he must present a substantial question as to the appropriateness of the sentence. *See Commonwealth v. Anderson,* 830 A.2d 1013, 1017 (Pa.Super.2003). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Commonwealth v. Kimbrough,* 872 A.2d 1244, 1263 (Pa.Super.2005) (en banc), *appeal denied,* 585 Pa. 687, 887 A.2d 1240 (2005) (table). If an appellant's Rule 2119(f) statement meets these prerequisites, we determine whether a substantial question exists. *Commonwealth v. Gog-*

*gins,* 748 A.2d 721, 727 (Pa.Super.2000) (*en banc*), *appeal denied,* 563 Pa. 672, 759 A.2d 920 (2000). "Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.* (emphasis in original).

¶ 20 Appellant has included what purports to be a Pa.R.A.P. 2119(f) statement in his brief. However, that statement consists of boilerplate language concerning the need for an individualized sentence, consideration of mitigating factors, and impermissible factors. Nowhere in the statement does Appellant apply this language to his sentence. Thus, we are unable to determine the basis for Appellant's claim that the trial court did not craft an individual sentence, considered impermissible factors, or failed to consider mitigating factors.

¶ 21 In the argument section of his brief, Appellant abandons any discretionary aspects of sentence claim. Instead, Appellant's "argument" consists of two sentences as follows:

[t]he appellant's argument for his sentence is tied to his earlier position regarding his conviction for the large amount of drugs that resulted from the Williams–Bayette–Poole transaction. It is appellant's position that he should not have been convicted for this and should not have been liable for an amount of drugs that gave him a mandatory minimum sentence.

Appellant's Brief at 21.

¶ 22 As Appellant did not raise a discretionary aspects of sentence challenge in his 1925 statement or in the argument section of his brief, and as his 2119(f) statement fails to articulate how his sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental

norms underlying the sentencing scheme, we find any discretionary aspects of sentence claim to be waived. Pa.R.A.P. 1925(b)(4)(vii); *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998); *Commonwealth v. Liston,* 941 A.2d 1279, 1285 (Pa.Super.2008) (*en banc*), *appeal granted in part,* 598 Pa. 638, 959 A.2d 1248, 2008 WL 4754665 (2008); *Goggins, supra.*

¶ 23 While ordinarily we would find Appellant's challenge to the mandatory minimum sentence waived because it was raised for the first time in his 1925 statement, a challenge to the legality of sentence claim is not waivable. *Commonwealth v. Rush,* 959 A.2d 945, 950 (Pa.Super.2008), *appeal denied* 972 A.2d 521 (Pa. 2009). Thus, we will review the claim.

¶ 24 Appellant's challenge to the legality of his sentence is underdeveloped. It is Appellant's obligation to sufficiently develop arguments in his brief by applying the relevant law to the facts of the case, persuade this Court that there were errors below, and convince us relief is due because of those errors. If an appellant does not do so, we may find the argument waived. Accordingly, as Appellant has not developed his legality of sentencing argument in a manner which allows for meaningful review by this Court, we find this particular argument waived. *Rush, supra.*

¶ 25 In any event, to the extent that it can be determined, Appellant's legality of the sentence claim appears to rest on the weight of the evidence claim, which we have determined to lack merit. His legality of the sentence claim appears again to be a claim that the trial court should have credited the testimony of Williams with respect to Appellant's lack of involvement in the transaction, testimony that the trial court specifically found to be incredible. Trial Court Opinion filed November 10, 2008 at n. 6. There is no basis for this Court to overturn the credibility determination of the trial court. Thus, we find Appellant's legality of sentence claim to lack merit.

¶ 26 Judgment of sentence **AFFIRMED.** Jurisdiction **RELINQUISHED.**

¶ 27 Judge SHOGAN concurs in the result.