J-S32030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RANDY HARRY BROOMALL, JR. | |
| Appellant | No. 2362 EDA 2016 |

Appeal from the Judgment of Sentence imposed June 2, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0006895-2015

BEFORE:  GANTMAN, P.J., STABILE, and FITZGERALD[*], JJ.

MEMORANDUM BY STABILE, J.:                              **FILED JULY 18, 2017**

Appellant, Randy Harry Broomall, Jr. appeals from the judgment of sentence imposed on June 2, 2016, in the Court of Common Pleas of Delaware County, following Appellant's convictions of criminal conspiracy—possession with intent to deliver; possession of a controlled substance—Oxycodone, Alprazolam; possession of drug paraphernalia; possession with intent to deliver—cocaine; and possession with intent to deliver—heroin.[1] Appellant challenges the sufficiency of evidence supporting his guilty verdicts and claims trial court erred in permitting a Commonwealth drug

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A § 903; 35 P.S. §§780-113(a)16, 113(a)32, 113(a)30, and 113(a)30, respectively.

investigations expert to respond to questions about fingerprinting evidence. Following review, we affirm.

Appellant was charged with the above-enumerated offenses after drugs and drug paraphernalia were recovered during a raid on a trailer owned and occupied by his mother, Commonwealth witness Anna Owens ("Owens"). Owens explained that Appellant did not reside with her but was present at the trailer on a daily basis and kept some personal items there, including a safe that was retrieved from the trailer in response to a search warrant.

The trial court aptly and thoroughly summarized both the factual history and procedural history of the case. Trial Court Opinion, 11/21/16, 2-7. We hereby adopt the trial court summaries as our own and incorporate them herein as if fully set forth. For our purposes, it is sufficient to reiterate that Appellant was convicted of all the charges listed above and was subsequently sentenced to an aggregate term of imprisonment of 18 to 36 years in prison, followed by four years of state probation. In this timely appeal from the judgment of sentence, Appellant asks us to consider three issues, which he phrases as declaratory statements as follows:

1. The evidence was insufficient to support the verdict of the jury. The evidence presented by the Commonwealth relied on the testimony of Anna Owens to provide inculpatory information about the criminal conduct of [Appellant]. Her testimony was not corroborated by any other witness and the jury needed to rely on the testimony of Anna Owens as proof beyond a reasonable doubt that [Appellant] conspired with Anna Owens to possess the controlled substances found in the

home. This Commonwealth witness did not provide credible and believable testimony to support the jury's finding even when her testimony is viewed in the light most favorable to the verdict winner. Owens denied that she was an accomplice or a co-conspirator of [Appellant]. Nothing in the record of the trial in this case supports the decision of the jury to find that [Appellant] conspired with Anna Owens to possess heroin or cocaine with the intent to deliver.[2]

2. The learned court erred when it allowed the Commonwealth to question witness Sergeant Kenneth Rutherford, Jr. as an expert about fingerprint evidence. The witness was qualified as an expert in the fields of drugs and drug investigation. By his own admission, Sergeant Rutherford acknowledged that he is not a fingerprint expert.

3. The Appellant raises one issue concerning the sentence imposed by the trial court.

   a. The record is devoid of any evidence the defendant engaged in a conspiracy with Anna Owens and the sentence imposed for Conspiracy to Possession with intent to deliver must be vacated.

Appellant's Brief, Statement of the Questions Involved, at 3.

Appellant's first and third issues challenge the sufficiency of the evidence to support Appellant's convictions. After outlining the correct standard of review for a sufficiency challenge, the trial court explained the elements of conspiracy and the elements of possession with intent to deliver. The court then embarked upon a comprehensive review of the evidence presented at trial and concluded the Commonwealth offered evidence sufficient to enable the jury to find every material element of the crimes

---

[2] We note that Owens entered a guilty plea to a conspiracy charge. The jury was apprised of that fact. *See* Notes of Testimony, 4/13/16, at 219-22.

- 3 -

charged and that Appellant committed those crimes. Trial Court Opinion, 11/21/16, at 7-17, 22. Our review of the record confirms the trial court's evidentiary findings and legal determinations regarding sufficiency. Therefore, we hereby adopt as our own and incorporate herein by reference the trial court's disposition of Appellant's first and third issues.[3]

In his second issue, Appellant argues trial court error relating to questions asked of the Commonwealth's drugs and drug investigations expert. Specifically, Appellant complains that the trial court permitted questioning of the expert, over objection, in the area of fingerprint evidence. Appellant's argument lacks merit.

First, with regard to Appellant's alleged "objection," the objection was not timely made. The transcript reveals that Appellant first objected to fingerprint evidence testimony during the Commonwealth's redirect examination of the expert. The record reflects the following exchange:

---

[3] We further note that the focus of the sufficiency argument in Appellant's brief is the conduct of Owens rather than the conduct of Appellant. In essence, Appellant is challenging the credibility of Owens' testimony, testimony the jury was free to believe or disbelieve. **See, e.g., Commonwealth v. Gibbs**, 981 A.2d 274, 282 (Pa. Super. 2009).

> [APPELLANT'S COUNSEL]: At this point, I want to object. We just got over him saying his role here is to say whether these drugs are dealt – are to deal or to not to deal. Now we're getting into the points on fingerprints.
>
> THE COURT: Well, you cross examined him on it.
>
> [APPELLANT'S COUNSEL]: I did because he offered it on direct.
>
> THE COURT: Well, overruled.
>
> [APPELLANT'S COUNSEL]: Okay.
>
> THE COURT: If it's an objection, it's overruled.

Notes of Testimony, 4/14/16, at 158-59. As the trial court determined, "Appellant failed to preserve this claim for appeal as he did not object to the witness' statements at trial and raises this argument for the first time on appeal. . . . Accordingly, this argument is waived." Trial Court Opinion, 11/21/16, at 18.

Second, as the trial court concluded, the expert did not offer any expert opinions regarding fingerprint evidence. Rather, he simply explained that fingerprinting the bags of heroin in a case such as Appellant's—involving more than 900 bags of drugs—was not his normal practice, that it was time-consuming, and that it was not "really feasible." Notes of Testimony, 4/14/16, at 147-48. Therefore, even if not waived, Appellant's second issue fails for lack of merit. We hereby adopt as our own and incorporate herein by reference the trial court's disposition of Appellant's second issue. Trial Court Opinion, 11/21/16, at 17-20. In the event of further proceedings, the

parties shall attach a copy of the trial court's November 21, 2016 opinion to their filings.

Judgment affirmed. In the event of further proceedings, the parties shall attach a copy of the trial court's November 21, 2016 opinion to their filings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2017

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | No. 2362 EDA 2016 |
| | CP-23-CR-0006895-2015 |
| v. | |
| RANDY BROOMALL | |

John F.X. Reilly, Esquire, Deputy District Attorney for the Commonwealth
Douglas L. Smith, Esquire, Attorney for the Appellant

## O P I N I O N

NILON, J.                                                            FILED: 11/21/16

Randy Broomall, hereinafter "Appellant", argues that he is entitled to relief from his conviction for Criminal Conspiracy-Possession with Intent to Deliver[1], Possession of a Controlled Substance-Oxycodone, Alprazolam[2], Possession of Drug Paraphernalia[3], Possession with Intent to Deliver-Cocaine[4], Possession with Intent to Deliver- Heroin[5] and his resulting sentence. Appellant's contention is meritless.

## FACTUAL HISTORY:

This is an appeal from this Court's Judgment of Sentence imposed on June 2, 2016. The nature and history of the case are as follows:

A police investigation began based upon information received by the Chester Township Police Department from a Confidential Informant that illegal drug sales were taking place at 53 Concord Road, Trailer #30, in Chester Township, Delaware County,

---

[1] 18 P.S. §903
[2] 35 P.S. 780-113(a)16
[3] 35 P.S. 780-113(a)32
[4] 35 P.S. 780-113(a)30
[5] 35 P.S. 780-113(a)30

SERVICE BY FIRST CLASS MAIL
AND
INTEROFFICE MAIL



PA. (N.T. 4/14/16 p.46). The police completed further investigation including surveillance of the area and a trash-pull yielding illegal narcotics, consistent with the use and/or the sale of illegal narcotics. (N.T. 4/14/16 p.10). The police then applied for and received a search warrant for the property. (N.T. 4/14/16 p.13).

On July 16, 2015, in the early afternoon, Detective Sgt. Merritt Harman, a Narcotics Detective employed by the Chester Township Police Department, and members of the Delaware County Tactical Response Team executed a search warrant for the residence of Anna Owens located at 53 Concord Road, Trailer #30 in Chester Township, Delaware County, Pennsylvania. (N.T. 4/14/16 p.14). At the time the search warrant was executed at the residence, Ms. Owens was walking near the home and was brought back to the residence while the search was completed. She was the only person present in the house when the police executed the warrant. The owner of the residence, Anna Owens, is the Appellant's mother. (N.T. 4/13/16 p.95).

The police found drugs and drug paraphernalia e.g., pills, bag of Heroin, scale, straws, pipe, and Suboxone wrappers during their search of the trailer. (N.T. 4/14/16 pp.18-20). There was a Stipulation read to the Jury that the parties agreed that the seized narcotics from the living room area of the trailer included Heroin, Alprazolam, and Suboxone as determined by the PA State Police Crime Lab. (N.T. 4/14/16 p.24). Subsequently, a second search warrant was applied for and obtained to search a small, gray Sentry safe, serial #1205 located in the residence. (N.T. 4/14/16 p.28).

During the search of the Sentry safe, the Detective discovered "[a] large amount of heroin, cocaine, packaging materials, glassine baggies, blue wax paper, some pills." (N.T. 4/14/16 p.29). There were 39 baggies with Cocaine and 953 individually wrapped

2

bags of Heroin. (N.T. 4/14/16 pp.35, 36, 53). The Stipulation noted above, which was entered into evidence at trial, provided that the controlled substances were submitted to the Lima Regional Laboratory and it was determined that: item 1.1 contained 29g of Heroin, item 2.1.1 weighed 4.98 grams and was Oxycodone, 2 more items of Oxycodone weighing 2.6grams, item 2.2 contained Alprazolam, items 3.1, 5.1-5.3 contained Cocaine weighing approx. 97.38 grams and item 4.1 contained 26.84 grams of Heroin. (Commonwealth's Exhibit C-29). (N.T. 4/14/16 pp.31,162). The parties stipulated that the total weight of some of the narcotics in the safe was: Heroin-55.9 grams, and Cocaine, 90.1 grams (N.T. 4/14/16 p.40).

Anna Owens was arrested on July 16, 2015 after the initial search of her home. She was brought to the police station and gave a statement. (N.T. 4/14/16 p.42). Thereafter, the search warrant for the safe was executed, and the 39 baggies of Cocaine and 953 individually wrapped bags of Heroin were discovered. The Appellant was subsequently arrested by the Chester Township Police Department and charged with Possession with Intent to Deliver, Conspiracy, and related offenses.

Ms. Owens testified at trial and her statement to police from July 16, 2015 was played for the Jury. (N.T. 4/13/16 p.105). Ms. Owens testified that her son, the Appellant, did not spend the night in her home, but he kept clothing there and was present in the home every day. (N.T. 4/13/16 pp.112,117). Ms. Owens testified that the Appellant owned the Sentry safe in the front bedroom of her trailer. (N.T. 4/13/16 p.122). She admitted being heavily addicted to Percocet (N.T. 4/13/16 p.143) and being addicted to Heroin. (N.T. 4/13/16 p.190). Ms. Owens gave a total of three statements to the police. She testified she saw the Appellant put Heroin in bags the night before the police raid of

3

her home. (N.T. 4/13/16 pp.161,186). She observed people buying Heroin from Appellant. (N.T. 4/13/16 p.165). She testified that the Appellant sold Heroin to Barry Davis. (N.T. 4/13/16 p.140). During her final police interview, Ms. Owens testified "I saw him put the drugs in [the safe] the night before." (N.T. 4/13/16 p.184). She observed hand-to-hand transactions from Appellant to other people inside her residence for Heroin. (N.T. 4/13/16 pp.197, 209). The night before the police executed the search warrant Ms. Owens observed four people, Appellant, his girlfriend, Mary Beth and Jimmy, sitting around her kitchen table packaging heroin into plastic bags. It took about two and a half hours. (N.T. 4/13/16 pp.186-187). Finally, she testified that the drugs in the small gray Sentry safe belonged to her son, the Appellant. (N.T. 4/13/16 pp.214-215). She admitted that she pled guilty to three felonies stemming from these events: Criminal Conspiracy, Possession with Intent to Deliver-Cocaine and Possession with Intent to Deliver-Heroin. (N.T. 4/13/16 pp. 219-220).

**PROCEDURAL HISTORY:**

Appellant was arrested and charged on July 31, 2015 with Criminal Conspiracy-Possession with Intent to Deliver[6], Possession of a Controlled Substance-Oxycodone, Alprazolam[7], Possession of Drug Paraphernalia[8], Possession with Intent to Deliver-Cocaine[9], Possession with Intent to Deliver- Heroin[10]

On December 9, 2015, the Appellant was arraigned and represented by Keith Garrity, Esquire. On April 13, 2016, a Jury Trial commenced and on April 15, 2016, the

---

[6] 18 P.S. §903
[7] 35 P.S. 780-113(a)16
[8] 35 P.S. 780-113(a)32
[9] 35 P.S. 780-113(a)30
[10] 35 P.S. 780-113(a)30

4

Jury found Appellant Guilty of all charges. Prior to sentencing, the Court ordered a Pre-Sentence Investigation, as well as a Psychological Evaluation, and a Drug and Alcohol Evaluation.

On June 2,2016, Appellant was sentenced as follows: "Count 5, Possession with Intent to Deliver, 72-144 months SCI, no RRI, no boot camp, provide a DNA sample, $100 assessment... On count 1, conspiracy to possession with intent to deliver, 72 to 144 months SCI, consecutive to count 5, no RRRI, no boot camp, provide a DNA sample, $100 assessment and payment of court costs. On count 4, possession with intent to deliver cocaine, 72 through 144 months SCI consecutive to count 1, no RRR I, no boot camp, $100 assessment, provide a DNA sample, payment of court costs. On count 2, possession, which does not merge because the drugs are alprazolam and oxycodone, the court sentences the Defendant to three years state probation consecutive to count 4, $100 assessment, payment of costs. And on count 3, drug paraphernalia, the court sentences the defendant to one-year state probation consecutive to count 2. Forfeiture of all the items seized. The aggregate sentence is 18 to 36 years SCI plus 4 years state probation..." (N.T. 6/2/16 pp. 13-14).

On June 13, 2016, the Appellant filed a "Motion for Reconsideration of Sentence", a hearing was held on June 14, 2016 and on June 15, 2016, the Motion was denied. The Delaware County Office of the Public Defender entered their appearance for the Appellant after trial but later filed a conflict petition based upon a conflict of interest that existed. Thereafter, the court appointed Mr. Douglas L. Smith, Esquire to represent the Appellant on appeal.

On July 14, 2016, Appellant filed a timely Notice of Appeal. Consequently, on July 20, 2016, Pursuant to Pa. R.A.P. 1925(b), the Court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal. New appellate counsel was granted an enlargement of time to file his Concise Statement. Therefore, on September 28, 2016, Appellant filed a Concise Statement raising the following issues for appellate review:

1. The evidence was insufficient to support the verdict of the jury. The evidence presented by the Commonwealth relied on the testimony of Anna Owens to provide inculpatory information about the criminal conduct of the defendant. Her testimony was not corroborated by any other witness and the jury needed to rely on the testimony of Anna Owens as proof beyond a reasonable doubt that the defendant possessed the controlled substances found in the home of Anna Owens. This Commonwealth witness did not provide credible and believable testimony to support the jury's finding even when her testimony is viewed in the light most favorable to the verdict winner. This witness admitted that she did not tell the truth to the police when they interviewed her on July 15, 2015. She acknowledged that she was under the influence of alcohol on July 15, 2015 and that she was not fully coherent. Owens admitted on direct and cross-examination at trial that she lied to the police, that she withheld information and she did not want to get herself or her son in trouble. Her testimony as an accomplice was not corroborated by any other witness even though she described several as being present when the defendant possessed, packaged and sold heroin. The only corroboration of this witness was her self-serving testimony that she saw the defendant place heroin and controlled substances and paraphernalia in a safe that was in the bedroom she occupied in her home. Owens denied that she was an accomplice or a co-conspirator of the defendant. Nothing in the record of the trial in this case supports the decision of the jury to find that this defendant conspired with Anna Owens to possess heroin or cocaine with the intent to deliver.

2. The learned court erred when it allowed the Commonwealth to question witness Sergeant Kenneth Rutherford, Jr. As an expert about fingerprint evidence. NT 4/14/16 p.158. The witness was qualified as an expert in the fields of drugs and drug investigation. By his own admission, Sergeant Rutherford acknowledged that he is not a fingerprint expert. NT 4/14/16 p.161.

3. The Honorable Court imposed consecutive sentences for each of the guilty verdicts rendered by the jury. The sentences imposed by the court are excessive, unduly harsh and not supported by the reasons placed on the record

6

by the court. The record is devoid of any evidence the defendant engaged in a conspiracy with Anna Owens and the sentence imposed for Conspiracy to Possession with Intent to Deliver must be vacated.

## DISCUSSION:

### I. The Evidence Was Sufficient to Support the Verdict

The first issue raised by the Appellant for appellate review presents a challenge to the sufficiency of the evidence. Specifically, he challenges the verdict of guilty beyond a reasonable doubt relating to the charge of Conspiracy to Possess with Intent to Deliver– Heroin or Cocaine.

#### A. Standards governing sufficiency of the evidence

A claim challenging the sufficiency of the evidence is a question of law. Commonwealth v. Strouse, 2006 Pa. Super. 273, 909 A.2d 368 (2006); Commonwealth v. Dale, 2003 Pa. Super. 413, 836 A.2d 150 (2003). When reviewing a challenge to the sufficiency of the evidence to support a conviction, the court must determine whether the evidence was sufficient to enable the trier of fact to find every material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the Commonwealth, as the verdict winner. Commonwealth v. Strouse, *supra*; Commonwealth v. Dale, *supra*. (See also Commonwealth v. McCloskey, 2003 Pa. Super. 409, 835 A.2d 801 (2003); Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745 (2000).

Furthermore, the Commonwealth may sustain its burden by proving the elements of the offense with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give evidence produced, is free to

7

believe all, part, or none of the evidence. <u>Commonwealth v. Jette</u>, 818 A.2d 533, 534 (Pa. Super 2003).

The Superior Court may not substitute its judgment for that of the finder of fact. <u>Commonwealth v. Hopkins</u>, 747 A.2d 910 (Pa. Super. 2000). If the fact finder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed to support the verdict. <u>Commonwealth v. Wood</u>, 432 Pa. Super. 183, 637 A.2d 1335 (1994). The standard applies equally to cases in which the evidence is circumstantial, rather than direct, as long as the evidence as a whole links the accused to the crime charged beyond a reasonable doubt. <u>Commonwealth v. Hardcastle</u>, 519 Pa. 236, 546 A.2d 1101 (1988); <u>Commonwealth v. Swerdlow</u>, 431 Pa. Super. 453, 636 A.2d 1173 (1994).

Additionally, mere conflicts in the testimony of the witnesses do not render the evidence insufficient. <u>Commonwealth v. Moore</u>, 436 Pa. Super. 495, 648 A.2d 331 (1994). Questions of doubt are for the finder of fact, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the totality of the circumstances. <u>Commonwealth v. Cassidy</u>, 447 Pa. Super. 192, 668 A.2d 1143 (1995); <u>Commonwealth v. Govens</u>, 429 Pa. Super. 464, 488, 632 A.2d 1316 (1993), *alloc.* den., 539 Pa. 675, 652 A.2d 1321 (1994). Only when the evidence offered to support the verdict is in contradiction to the physical facts, or in contravention to human experience and the laws of nature, can the evidence be considered insufficient as a matter of law. <u>Commonwealth v. Widmer</u>, *supra*.

8

## B. The Evidence Was Sufficient to Support Appellant's Conviction For Criminal Conspiracy

The Appellant was convicted of Criminal Conspiracy- Possession with Intent to Deliver with 1 or more persons. The Appellant challenges the sufficiency of the evidence for this conviction.

With respect to the crime of Criminal Conspiracy, the Commonwealth must prove that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done by the appellant or one or more of the other co-conspirators in furtherance of the of the agreed upon crime[11] Commonwealth v. McCall, 911 A.2d 992 (Pa. Super. 2006). Conspiracy is an agreement to commit an unlawful act, which can be proven by the relation, conduct or circumstances surrounding the parties and incidents involved. Commonwealth v. Glover, 399 Pa. Super. 610, 582 A.2d 1111 (1999). It is not necessary to prove a formal agreement or contract but instead, can be proven by circumstantial evidence. Commonwealth v. Lawson, 437 Pa. Super. 521, 650 A.2d 876 (1994); Commonwealth v. Roux, 465 Pa. 482, 350 A.2d 867 (1976). See Commonwealth v. Murphy, 795 A.2d 1025, 1039 (Pa. Super. 2002) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence.").

As to the sufficiency of evidence offered to prove conspiracy, the Pennsylvania Superior Court has observed:

> [c]ircumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:

---

[11] 18 Pa.C.S. §903.

9

An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail. *Commonwealth v. Jones*, 874 A.2d 108, 121–22 (Pa. Super. 2005) (quoting *Commonwealth v. Greene*, 702 A.2d 547, 554 (Pa. Super. 1997)) (internal citations omitted).

*Commonwealth v. Irvin*, 134 A.3d 67, 76 (Pa. Super. 2016).

In the case *sub judice*, the court finds that the totality of the evidence taken in the light most favorable to the Commonwealth was sufficient to convict Appellant of Criminal Conspiracy.

The Commonwealth sought to establish Appellant's connection to the Heroin, Cocaine and other contraband stored inside the safe through evidence that he dealt drugs from Ms. Owens' residence. Toward this end, trial testimony indicated the safe belonged to Appellant. It described how Appellant was observed packaging the drugs, putting the drugs in the safe, and selling Heroin and other drugs from the residence. Appellant was operating under an arrangement with his mother by which he was allowed to use her residence as a base for selling narcotics to others. The Commonwealth also presented expert opinion that the large amount of Heroin and other drugs located in the safe was consistent with the intent to deliver. (N.T. 4/14/16 p.146).

Ms. Owens provided three separate interviews to the police. The first two interviews were played for the Jury and were taken on July 16, 2015, the day that the search warrant for the trailer was executed. (N.T. 4/13/16 pp.105-148-first interview). (N.T. 4/13/16 pp.150-157-second interview). Ms. Owens' third police interview took place on April 12, 2016, the day before the trial began. She had counsel present. The third

10

interview was also played for the Jury. (N.T. 4/13/16 pp.174-214 third interview). Ms. Owens testified that she held information back from the first interview because she was afraid for herself and for her son. (N.T. 4/13/16 p.150). She again testified that she held back information from the police from the second interview because "I'm scared for my son." (N.T. 4/13/16 p.158). Ms. Owens' third interview provided a more thorough implication of her son.

Ms. Owens testified that the gray Sentry safe in the front bedroom of her trailer with Cocaine, drug paraphernalia and 953 bags of Heroin in it belonged to the Appellant. (N.T. 4/13/16 p.182). She observed Appellant put drugs in the safe. (N.T. 4/13/16 p.184). She observed Appellant and several other people at her kitchen table packaging drugs the night before the police came to the residence. (N.T. 4/13/16 p.186).

> Randy would open the bag up and use a scooper, some kind of spoon. I think he went in and go up to 7-11, use their Slushies and he'd scoop it into a blue bag. He's pass it off to the other person, Mary Beth, and she'd fold it down, pass them up to her boyfriend and he would put it in the Ziploc bag. Then they would throw them on a big bowl on my table and at the end everybody would—they would sit all around and wrap them in the rubber bands.

(N.T. 4/13/16 pp.186-187). Ms. Owens admitted she was a heroin user. (N.T. 4/13/16 p.190). She testified to observing numerous hand-to-hand drug sales by the Appellant to different drug buyers both inside and outside her trailer. (N.T. 4/13/16 pp.196-7, 209). She testified that Appellant sold bundles of heroin to Barry Davis on a regular basis. (N.T. 4/13/16 pp.199). She testified:

> Q. The drugs that were located in the safe in the small gray Sentry safe, did they belong to Mary Beth or Jimmy?
> A. No.
> Q. Did those drugs belong to Barry Davis?
> A. no.
> Q. Did they belong to George Gomer?

11

A. No.
Q. Did they belong to Tracey?
A. No.
Q. Did they belong to Shonte?
A. No.
Q. Did they belong to Braheem Lawson?
A. No.
Q. Who did they belong to?
A. Randy Broomall.

Thus, the inference can be made that Appellant intended that Ms. Owens aid him in delivering Cocaine and Heroin in furtherance of a plan to possess contraband with intent to deliver it. The Appellant clearly took an active role in this illicit enterprise.

Police Officer Kenneth C. Rutherford, Jr., testified as an expert in the field of drugs and drug investigations.[12] In his opinion, Appellant was engaged in the offense of Possession with the Intent to Deliver for Cocaine and Heroin. (N.T. 4/14/16 p.146). The Officer opined: "[a]nd my opinion, I mean, the volume of this just in general, I mean, it's not a difficult opinion. These drugs were possessed with intent to distribute and not for personal use." (N.T. 4/14/16 p.146). "There's no way that a user would have 950 some bags of heroin" (N.T. 4/14/16 p.142). In addition, the Appellant resided at a halfway house and used his mother's trailer to package and store narcotics. The Officer opined that dealers need a safe house to store their drugs. (N.T. 4/14/16 pp.133-134).

The conspiracy that Officer Harman came upon cannot be ignored. The Appellant was involved in a drug business and Ms. Owens was a part of that business. The conspiracy described above is supported by the evidence and reflects the reality that drug dealers often have a safe house to store drugs and to conduct drug sales.

---

[12] Admitted as an expert. (N.T.4/14/16 p.121).

12

The Appellant contends that Ms. Owens withheld information from the police, and was under the influence of alcohol on July 15, 2015. These contentions are true and the Jury heard them. Her testimony implicated the Appellant incrementally over the course of the three interviews played for the Jury. The Jury heard Ms. Owens testify that she had been drinking on the morning of her arrest and that she was not fully coherent when providing her first statement to the police. (N.T. 4/13/16 pp.98-100). She admitted being heavily addicted to Percocet (N.T. 4/13/16 p.143) and being addicted to Heroin. (N.T. 4/13/16 p.190). However, she was consistent throughout her testimony that the gray Sentry safe belonged to her son, the Appellant. She initially testified that it was Appellant's safe that he had owned for ten years but during her first interview she claimed that he only stored empty bags in it. (N.T. 4/13/16 p.122). Eventually in her third police interview, she testified that the drugs in the small gray Sentry safe belonged to her son, the Appellant. (N.T. 4/13/16 pp.214-215). The Jury heard all of the evidence mentioned by the Appellant and nevertheless convicted the Appellant. It is axiomatic that the finder of fact may believe all, some or none of a witness's testimony. Commonwealth v. Holley, 945 A.2d 241, 247 (Pa. Super. 2008). In addition, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed. Commonwealth v. Hartle, 894 A.2d 800, 803 (Pa. Super. 2006).

The sum of the evidence sufficed to prove beyond a reasonable doubt the existence of an agreement between Appellant and Ms. Owens permitting Appellant to deal Heroin and Cocaine from the residence. All of the Heroin and Cocaine recovered from the safe was consistent with Ms. Owens' version of events that the Appellant was packaging 39 baggies with Cocaine and 953 baggies of Heroin, storing them in the Sentry

13

safe in her trailer, and using the narcotics to run a drug operation from her trailer. (N.T. 4/14/16 pp. 35, 36, 53).

The testimony reviewed above and the evidence introduced at trial, making all reasonable inferences therefrom in a light most favorable to the Commonwealth, as the verdict winner, was sufficient to prove beyond a reasonable doubt, that Appellant was guilty of Criminal Conspiracy to Possess with Intent to Deliver; and also, that Appellant's actions were in furtherance of the Conspiracy. Accordingly, Appellant's first issue is without merit.

### C. The Evidence Was Sufficient to Support Appellant's Conviction For Possession with Intent to Deliver–Heroin and Cocaine.

The court, in viewing the evidence and the reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner, determines that the Commonwealth established all the elements of the crime beyond a reasonable doubt and finds that there was sufficient evidence presented at trial to support Appellant's conviction for Possession with Intent to Deliver–Heroin and Cocaine.

The elements of the crime of Possession of a Controlled Substance With Intent to Deliver are as follows:

35 Pa.C.S. Section 780-113(a): The following acts and causing thereof within the Commonwealth are hereby prohibited:

(30). Except as authorized by this act, the manufacture, delivery, or possession with the intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

Under the standard described above, the evidence was sufficient to establish that Appellant was guilty of possessing a controlled substance with intent to deliver. The

14

term possession is defined as the ability to exercise dominion and control over an area or object, and the possession may be actual or constructive. Commonwealth v. Aviles, 615 A.2d 398 (Pa. Super. 1992). Constructive possession is a legal fiction created to deal with the realities of criminal law enforcement; it is an inference arising from a set of facts that the possession of contraband was more likely than not. Id. The Commonwealth may prove constructive possession by circumstantial evidence. Commonwealth v. Gladden, 445 Pa. Super. 434, 665 A.2d 1201, 1207 (1995). Individually, each circumstance may not be decisive, but the totality of the circumstances may justify an inference that the accused had both the power to control and the intent to exercise that control. Id. Constructive possession may be established by the totality of the circumstances that demonstrate the defendant exercised dominion and control over the controlled substance. Aviles, 615 A.2d at 402 (citing Commonwealth v. Macolino, 503 Pa. 201, 469 A.2d 132 (1983); Commonwealth v. Fortune, 456 Pa. 365, 318 A.2d 327 (1974)).

The court notes that all facts and circumstances surrounding the possession are relevant in making the determination of whether the controlled substance was possessed with the intent to deliver or was possessed for personal use. Commonwealth v. Sherrell, 414 Pa. Super. 477, 481-482, 607 A.2d 767, 769 (1992). Intent to deliver may be inferred from possession of a large quantity of a controlled substance alone. Commonwealth v. Jackson, 435 Pa. Super. 410, 413, 645 A.2d 1366, 1368 (1994). Other factors to consider in determining intent to deliver are the manner in which the substance was packaged, a Defendant's presence at the location where drugs are discovered, and the presence of drug paraphernalia. Id. See Commonwealth v. Parsons, 391 Pa. Super. 273, 570 A.2d 1328 (1990), citing Commonwealth v. Harris, 263 Pa. Super. 110, 397 A.2d

15

424 (1979). Expert testimony is admissible concerning whether the facts surrounding the possession were consistent with intent to deliver rather than personal use. Id.; Sherrell, 607 A.2d at 769.

In the case *sub judice*, at trial, the Commonwealth called Sergeant Kenneth Rutherford, who was employed by the Lansdowne Borough Police Department for 16 years and was assigned to the Narcotics Division for seven and one-half years.[13] Officer Rutherford testified, as an expert in the field of drugs and drug investigation,[14] that in his opinion Appellant was engaged in the offense of Possession with the Intent to Deliver-Heroin and Cocaine and did not possess controlled substances for mere personal possession. (N.T. 4/14/16 p.146-7). He based this determination upon the narcotics present, the packaging, and the lab report. Id. "and I base that off of again, I mean, the packaging material also, the sheer volume of it, the way drugs are packaged, and the different types of packaging also" (N.T. 4/14/16 p.147).

The Officer opined: "[a]nd my opinion, I mean, the volume of this just in general, I mean, it's not a difficult opinion. These drugs were possessed with intent to distribute and not for personal use." (N.T. 4/14/16 p.146). "There's no way that a user would have 950 some bags of heroin" (N.T. 4/14/16 p.142). When asked about the quantity of heroin found, the Officer opined that it was not a low level dealer that would possess the amount of narcotics found in the safe. (N.T. 4/14/16 p.137). The Officer testified that the packaging itself would be consistent with dealing instead of just using narcotics. (N.T. 4/14/16 pp.137-139). The packaging consisted of multiple clear sandwich bags. The

---

[13] (N.T. 4/14/16 pp.115-116).
[14] Admitted as an expert. (N.T. 4/14/16 p.121).

Officer considered "in conjunction with other things, scale, cutting agents, packaging material". (N.T. 4/14/16 p.142).

In addition, the Appellant resided at a halfway house and used his mother's trailer to package and store narcotics. The Officer opined that dealers need a safe house to store their drugs. (N.T. 4/14/16 pp.133-134). A digital scale was seized from the residence and the Officer testified it is commonly used by drug dealers to weigh narcotics. (N.T. 4/14/16 p.136).

Based upon the Officer's credible testimony, the jury was able to determine that Appellant was in Possession of a Controlled Substance with Intent to Deliver-Heroin and Cocaine, in violation of 35 Pa.C.S. § 780-113(a)(30).

In light of the facts, this court finds that Appellant's allegation that the evidence was insufficient as a matter of law to support the conviction is meritless. While another fact-finder may have reached a different result, the evidence was not insufficient as a matter of law and as such this Appeal should be dismissed.

## II. Trial Court erred in permitting the Commonwealth to question witness Sergeant Kenneth Rutherford, Jr. as an expert about fingerprint evidence. NT 4/14/16 p.158

Appellant's second issue raised on appeal alleges that this court erred in permitting the Commonwealth to question Police Sergeant Kenneth Rutherford, Jr. "as an expert about fingerprint evidence" since the witness was only qualified as an expert in the fields of drugs and drug investigation. Appellant asserts that by his own admission, Sergeant Rutherford acknowledged that he is not a fingerprint expert. (N.T. 4/14/16 p.161).

However, to preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the

appropriate stage of the proceedings; failure to raise an objection results in waiver of the underlying issue on appeal. Commonwealth v. Charleston, 16 A.3d 505 (Pa. Super. 2011). Defendant's failure to raise a contemporaneous objection to evidence at trial waives such a claim on appeal. *See* Pa.R.Crim.P. 302(a); see also Commonwealth v. Bryant, 855 A.2d 726, 741 (Pa. 2004) (failure to raise contemporaneous objection to evidence at trial waives claim on appeal).

In the case *sub judice*, Appellant failed to preserve this claim for appeal as he did not object to the witness' statements at trial and raises this argument for the first time on appeal. *See* Pa.R.A.P. 302(a) (stating "issues not raised in trial court are waived and cannot be raised for first time on appeal"). Accordingly, this argument is waived. Id., *Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa. Super. 2013) (noting that "[e]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver").

Moreover, defense counsel would have had no basis for an objection to testimony by Sergeant Rutherford because he was not questioned as an expert in fingerprint evidence. On the contrary his testimony was that he did not fingerprint the '900 bags' of heroin in this case because that is not his normal practice and "it's not really feasible" (N.T. 4/14/16 p.148, 147). In addition, the defense conducted extensive cross-examination of Sergeant Rutherford which established for the jury that the Commonwealth could have taken fingerprints from the safe and the bags of Heroin and failed to do so.

> Q.—can you tell the ladies and gentlemen of the jury that you can't get fingerprints off the safe?
> A. I cannot say that you cannot get a print off of that, no....
> Q. And do you know of any of the evidence in this case an attempt to get—

18

A. No.

Q. – a classified print off?

A. Not that I heard, no.

(N.T. 4/14/16 p.150-51).

Further, the court charged the jury on expert testimony pursuant to the Pennsylvania Standard Criminal Jury Instructions. 4.10A (Crim) Expert Testimony-- Basic Instruction, Pa. SSJI (Crim), §4.10A (2016). The court charged as follows:

I permitted Sgt. Kenneth Rutherford to testify as expert witness. An expert witness is a person who has special knowledge or skill in some science, art, profession, occupation, or subject that the witness acquired by training, education, or experience. Because an expert has special --that is out of the ordinary knowledge or skill, he or she may be able to supply jurors with specialized information, explanations, and opinions that will help them decide a case. Now regular witnesses are bound by two limitations that do not apply to an expert. First, the regular witness generally can testify only about things that they personally perceive, things that they saw or heard themselves. And second, regular witnesses are not allowed to express opinions about matters that require special knowledge or skill. By contrast, an expert is allowed to express an opinion about a matter that falls within the area of his expertise. Furthermore, while an expert may base an opinion on things personally perceived, he may also base an opinion on factual information learned from other sources such as a lab report, the viewing the physical objects, the police reports, and all the information that was submitted. If the expert witness bases an opinion on things not personally perceived, he can describe the information on which he relied and then identify a source, when explaining the opinion. Remember, you, the jurors are the sole judges of the credibility and weight of all testimony. The fact that the lawyers and I may have referred to a certain witness as an expert, and that the witness may have special knowledge or skill, does not necessarily mean that their testimony or the opinion of the expert is right. When you're determining the credibility and weight of an expert's testimony and opinion, consider all the factors that I described earlier that are relevant when evaluating the testimony of any witness. You should also consider all other things bearing on credibility and weight, including the training, education, experience, and ability of the expert, the factual information on which he relied and basing his opinion; the source and reliability of that information, and the reasonableness of any explanation that he may have given to support his opinion.

19

(N.T. 4/14/16 pp.213-214). This instruction was given by the court and is almost verbatim of the standard jury instruction. See, 4.10A (Crim) Expert Testimony--Basic Instruction, Pa. SSJI (Crim), §4.10A (2016).

Officer Rutherford never offered expert testimony about fingerprint evidence. There was no evidence about the details of fingerprint evidence because no such evidence was taken in this case and candidly the Officer admitted "Well, I'm definitely not a fingerprint expert." (N.T. 4/14/16 p. 161). Appellant's allegation is meritless.

**III. The Court imposed consecutive sentences for each of the guilty verdicts rendered by the jury. The sentences imposed by the court are excessive, unduly harsh and not supported by the reasons placed on the record by the court. The record is devoid of any evidence the defendant engaged in a conspiracy with Anna Owens and the sentence imposed for Conspiracy to Possession with Intent to Deliver must be vacated.**

Finally, Appellant contends that the court gave him an excessive and harsh sentence. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Commonwealth v. Mastromarino, 2 A.3d 581, 589 (Pa. Super. 2010). Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question. Commonwealth v. Prisk, 13 A.3d 526, 533 (Pa. Super. 2011). See Commonwealth v. Hoag, 445 Pa. Super. 455, 665 A.2d 1212 (1995) (stating an Appellant is not entitled to a "volume discount" for his crimes by having all sentences run concurrently).

The Appellant was sentenced to count 5, Possession with Intent to Deliver, 72-144 months SCI, on count 1, conspiracy to possession with intent to deliver, 72 to 144

20

months SCI, consecutive to count 5, on count 4, possession with intent to deliver cocaine, 72 through 144 months SCI consecutive to count 1, on count 2, possession, which does not merge because the drugs are alprazolam and oxycodone, the court sentences the Defendant to three years state probation consecutive to count 4, and on count 3, drug paraphernalia, the court sentences the defendant to one-year state probation consecutive to count 2. The aggregate sentence is 18 to 36 years SCI plus 4 years state probation. (N.T. 6/2/16 pp. 13-14).

The court sentenced at the top end of the standard range of the Sentencing Guidelines for the three most severe charges; within the standard range on count 3; and below the mitigated range on count 2. The court acted well within its discretion. Further, given the number of deaths in Delaware County, Pennsylvania due to Heroin overdoses and the large amount of Heroin recovered in this case, the sentence imposed was not excessive or unduly harsh.

In addition, contrary to Appellant's assertions, the sentence imposed was supported by detailed reasons placed upon the record by the court. At Appellant's Sentencing Hearing the court stated:

> You have an extensive history. However, as Mr. Garrity pointed out that's already factored into the guidelines. The fact that you were on supervision at the time that these crimes were committed is not factored into the guidelines and that weighed in the court's decision as well. But the most important factors weighed in my decision with regard to the sentence are, first of all, the nature of the charge Possession with intent to Deliver. Second, the particular drug that was the subject of Possession with intent to deliver convictions which is heroin. Delaware County is facing a heroin epidemic. We have people dying, dying from heroin overdoses. The quantity of heroin that was seized at the time, 953 bags, that represents a threat to those many young addicts in Delaware County who are utilizing heroin and had it not been seized could have resulted in the death of heroin addicts in Delaware County. The sophistication of the operation. This wasn't some fly-by-night. There was a safe to store the

items that was being conducted in your mother's trailer. The quantity and method and description during the trial of bagging operation, the weighing and bagging of these drugs. This was a sophisticated drug operation. And I've taken all those accounts as well as the Pennsylvania sentencing guidelines in arriving at the sentence that I've arrived at. Mr. Broomall, do you understand the sentence? ...

(N.T. 6/2/16 pp. 15-17). Appellant's argument is meritless.

As to Appellant's assertion that the record is devoid of any evidence that he engaged in a conspiracy with Anna Owens, this argument is patently untrue and addressed at Issue I. The record is replete with evidence supporting his conspiracy conviction. It was uncontroverted that Appellant used Ms. Owens' trailer to not only store, package and prepare his narcotics for sale, but actual sales occurred from the residence all with the tacit approval of Ms. Owens. At the time of his arrest, Appellant was living at a halfway house, which would not have afforded him a location from which to conduct his illegal drug trafficking activities. Consequently, Appellant used his mother's residence to conduct his criminal enterprise.

**CONCLUSION:**

For the foregoing reasons, the Judgment of Sentence should be affirmed on appeal.

BY THE COURT:

JAMES F. NILON, JR., J.

2016 NOV 22 AM 9: 37
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA.
FILED

22