J-S02004-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                          :

             v.                           :
                                          :
                                          :

JOSEPHUS L. DAVIS                   :
                                          :

            Appellant              :       No. 201 EDA 2025

Appeal from the Judgment of Sentence Entered August 16, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000745-2021

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:                **FILED MAY 13, 2026**

Appellant Josephus L. Davis appeals from the judgment of sentence imposed following his convictions by jury trial for robbery, robbery of a motor vehicle, and kidnapping.[1] Appellant challenges the sufficiency and weight of the evidence, and the discretionary aspects of his sentence. We affirm.

The trial court summarized the underlying facts and procedural history of this case as follows:

> On July 11, 2019, at about 3:00 a.m., [the Victim] was working as an Uber driver in Philadelphia. He had parked his car to use a public bathroom, and when he returned, [Appellant] and another man were standing by [the Victim's] car. [Appellant] brandished a pistol and announced that [the Victim] was going to be robbed. At trial, [the Victim] identified [Appellant] as the person who brandished the gun and described him as a black male with short hair who was approximately five feet and seven or eight inches tall. [The Victim] described [Appellant] as having darker skin than

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 3702(a), and 2901(a)(2), respectively.

the other black male who was with him. Neither [Appellant] nor the other man were wearing masks.

[Appellant] told [the Victim] to get into the back seat of [the Victim's own] car. After [the Victim] got into the car and sat in the back passenger's side seat, [Appellant] sat down beside him. The other male got into the front driver's seat and started to drive [the Victim's] car. [Appellant] took money out of [the Victim's] wallet and demanded that [the Victim] unlock his gold-colored Apple iPhone. While doing so, [Appellant] pointed the gun at [the Victim's] head and chest. As [Appellant] was pointing the gun at [the Victim's] head, [the Victim] could see a tattoo on [Appellant's] hand. After about five minutes, [Appellant] and his accomplice stopped the car and told [the Victim] to get out. [Appellant] and his accomplice then drove away with [the Victim's] car, iPhone and wallet. After exiting the car, [the Victim] reported the robbery to the police. Later that morning, the police called [the Victim] and informed him that they had found his car, which had been left on a street.

Around September or October of 2021, [the Victim] received a notification on his new iPhone that a person with the account "sb-demon215" was trying to connect with his iPhone. When [the Victim] looked up the "sb-demon215" account name on Instagram, he saw photographs of [Appellant]. [The Victim] also recognized the tattoo on [Appellant's] hand in one of the photographs as the same tattoo that [the Victim] saw on the robber's hand during the robbery. [The Victim] viewed a video on the "sbdemon215" Instagram page featuring [Appellant] in a green shirt and a similar-looking man in a pink shirt. [The Victim] knew that the person in the pink shirt, who appeared to be a twin brother of [Appellant], was not the robber because the person in the pink shirt was "fatter" than the person who committed the robbery.

[The Victim] also viewed a rap video on YouTube through a link on the "sb-demon215" Instagram page. [The Victim] recognized a person in the video sitting on the roof of a building wearing a white shirt and black shorts as being the person who robbed him. Spraypainted on a brick wall beneath the person are the words, "SB Demon." [The Victim] identified [Appellant] as the person in the video. At one point in the video, [Appellant] can be seen holding [the Victim's] gold colored iPhone.

After viewing the photographs and videos from the "sb-demon215" Instagram page, [the Victim] went to the police station to share the information he had discovered. [The Victim] used his phone to show Detective William Lackman that the phone associated with "sb_demon215" had the same serial number as the phone stolen from [the Victim] during the robbery. At the police station, [the Victim] also identified a photograph of [Appellant] as the robber from a six-person photo array shown to [the Victim] by Detective Brian Boos.

[Appellant] was arrested by police on February 19, 2020. Photographs of [Appellant] taken at the time of his arrest showed a large letter "S" tattooed on [Appellant's] right hand and a large letter "B" tattooed on his left hand. At the time of his arrest, [Appellant] stated that he was five feet and six inches tall and that he weighed 155 pounds.

Trial Ct. Op., 3/7/25, at 2-4 (citations omitted and formatting altered).

On August 16, 2024, the trial court sentenced Appellant to an aggregate term of 186 to 372 months imprisonment. Appellant filed a timely post-sentence motion, which the trial court denied. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

1. Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which appellant was convicted.

2. Whether the verdict was against the weight of the evidence.

3. Whether the sentencing court abused [its] discretion by imposing a manifestly excessive sentence that was not based upon the gravity of the violation, the extent of appellant's record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S. [§] 9721 of the Sentencing Code.

Appellant's Brief at 8.

- 3 -

## Sufficiency of the Evidence

Appellant's first claim is that the evidence presented at trial was insufficient to establish the elements of each crime for which he was convicted because the Commonwealth failed to prove he was the perpetrator. **See** Appellant's Brief at 15-16. Specifically, Appellant claims his identity is mistaken with that of his twin brother, the "thinner" of the two twins.[2] **See** **id.** at 16. When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the

_____

[2] We note that in his Rule 1925(b) statement Appellant argued that the Victim testified at trial that the perpetrator was the heavier twin and that Appellant presented evidence at trial showing that his twin brother is the heavier twin and that he is the thinner twin. **See** Rule 1925(b) Statement, 1/11/25. In his appellate brief, Appellant makes the inverse argument. **See** Appellant's Brief at 16. Specifically, he claims that the perpetrator was the thinner twin, that Appellant's twin brother is the thinner twin, and that Appellant presented evidence at trial that he was the heavier twin. **See id.** The trial court addressed both arguments. **See** Trial Ct. Op., 3/7/25, at 4-6, 5 n.2.

Even though Appellant's argument differed between his Rule 1925(b) statement and appellate brief, we decline to find waiver as, under these circumstances, Appellant's error in presenting the claim does not prevent meaningful appellate review. **See Commonwealth v. Lawrence**, 313 A.3d 265, 283 (Pa. Super. 2024) (stating "[w]aiver is not required . . . in cases in which our ability to effectuate meaningful appellate review is not hindered" (citation omitted)).

province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

**Commonwealth v. Palmer**, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." **Commonwealth v. Smyser**, 195 A.3d 912, 915 (Pa. Super. 2018) (quotation marks and citation omitted). If a defendant challenges only the sufficiency of evidence as to identity, then we limit our review solely to that element. **See Commonwealth v. Cain**, 906 A.2d 1242, 1244 (Pa. Super. 2006) (declining to address the sufficiency of evidence supporting every element where a defendant challenged only identification evidence). We add:

Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

**Commonwealth v. Kinney**, 157 A.3d 968, 971 (Pa. Super. 2017) (citation omitted).

Here, the trial court explained:

[Appellant] claims that the evidence presented at trial was insufficient to sustain [his] convictions. More specifically, [Appellant] contends that the evidence shows that [the Victim] misidentified [Appellant] as the robber rather than [Appellant's] twin brother. As explained below, [Appellant] describes the record incorrectly, and his claim should be rejected.

\* \* \*

Here, in contending that [the Victim] misidentified [Appellant] as the person who robbed him, [Appellant] incorrectly claims in his Statement of Errors that [the Victim] testified that "the heavier twin was the person that robbed him." Statement of Errors at § 1. The record shows the opposite to be true. [The Victim] testified at trial that the person who robbed him was the thinner of the two brothers, not the heavier twin. N.T. 1/23/24 at 41; N.T. 1/24/24 at 38-39. Thus, [Appellant's] claim is inconsistent with the record and should be rejected.

Moreover, allegations of conflicts in evidence regarding identification are more properly classified as challenges to the weight of the evidence. *See Commonwealth v. Furness*, 153 A.3d 397, 404 (Pa. Super. 2016); *Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009). As explained below with regard to [Appellant's] claim challenging the weight of the evidence, [the Victim's] identification of [Appellant] was credible, confident, and corroborated by a number of factors, including a distinctive tattoo on [Appellant's] hand.

Trial Ct. Op., 3/7/25, at 4-6 (some formatting altered).

Additionally, the trial court explained:

In the event [Appellant] intended to claim in his Statement of Errors that the evidence at trial showed [Appellant's] twin brother to have been the thinner of the two brothers, contrary to [the Victim's] testimony, such an argument would also have been without merit. The weights listed on various police records for [Appellant] were inconsistent. For example, one document listed [Appellant's] weight as 180 pounds (Commonwealth Exhibit C-9C), and another listed [Appellant's] weight as 165 pounds (Commonwealth Exhibit C-15). Regardless, as the testimony of

Officer Samarco made clear at trial, the weights listed on police records for arrested individuals do not necessarily reflect a measurement of the person's actual weight, but instead often reflect the weight verbally provided by the arrested person at the time of arrest. N.T. 1/24/24 at 64-65. Moreover, while one police record listed the weight of [Appellant's] twin brother as being 150 pounds (Defense Exhibit D-3), no evidence was presented regarding the source and accuracy of the information in that record. In any event, [the Victim's] identification of [Appellant] was based not only on [Appellant's] weight but also on other information, including a distinctive tattoo on [Appellant's] hand. N.T. 1/23/24 at 38-39; Commonwealth Exhibit C-6H.

*See id.* at 5 n.2.

After careful consideration of the parties' briefs, the record, and the trial court's conclusions, we agree with the trial court and, accordingly, affirm based on the trial court's analysis of this issue. *See* Trial Ct. Op., 3/7/25, at 4-6, 5 n.2; *Smyser*, 195 A.3d at 915; *Cain*, 906 A.2d at 1244; *see also Kinney*, 157 A.3d at 971. Further, we agree with trial court's reasoning that Appellant's allegation regarding the misidentification of Appellant as the perpetrator, based on the weight discrepancy between him and his brother, is more properly considered as a weight of evidence claim rather than as a legal sufficiency claim, as more fully discussed below. *See Furness*, 153 A.3d at 404; *Gibbs*, 981 A.2d at 281-82.

**Weight of the Evidence**

As we briefly discussed, Appellant raises weight of the evidence claims to the victim's identification of Appellant as the person who robbed him. *See* Appellant's Brief at 17-18. Specifically, Appellant contends that the victim's identification testimony was unreliable and flawed based on the above-

described weight differences of Appellant and his twin brother. *See id.* Further, Appellant asserts that the identification of his hand tattoos is not credible because they were not visible in the social media pictures. *See id.* Therefore, Appellant concludes that the trial court erred in failing to set aside the jury's verdict as being against the weight of the evidence. *See id.*

When reviewing the denial of a motion for a new trial based on weight of the evidence, we are governed by the following standard of review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted). As this Court has repeatedly stated:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> \* \* \*
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial

judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered).

Here, the trial court explained:

At trial, [the Victim] testified that he knew [Appellant] was the person who robbed him in part based on a hand tattoo that he recognized from a photograph on the Instagram page for "sb-demon215." On appeal, [Appellant] argues that [the Victim's] identification of [Appellant] as the robber based on [Appellant's] hand tattoo was not credible because no hand tattoos are visible on [Appellant's] hand from the social media photographs and videos viewed by [the Victim]. The record shows otherwise. One of the photographs from the "sb-demon215" Instagram page shows a "B" tattoo on [Appellant's] hand. The same tattoo is visible on [Appellant's] hand in one of the photos of [Appellant] taken at the time of his arrest in this case.

[The Victim] explained during his testimony at trial that he remembered seeing the "B" tattoo on the robber's hand because he was able to see the tattoo as the robber was pointing a gun at him. Prior to [Appellant's] arrest in this case, [the Victim] told Detective Lackman that the robber had big tattoos on both hands, including a big "B" tattoo. The fact that [the Victim] was able to describe the robber as having such tattoos before [Appellant's] arrest significantly bolsters the credibility of [the Victim's] identification. Indeed, if [Appellant] were correct that no such tattoos were visible in the social media photographs and videos that had been viewed by [the Victim], then [the Victim's] identification of [Appellant] as the robber would be even more compelling.

Other evidence presented at trial further demonstrated that [the Victim's] identifications of [Appellant] and his hand tattoo were credible, confident, and corroborated by other evidence. [The Victim] testified that he sat next to [Appellant] in the backseat of the car during the robbery and was mere inches away from [Appellant], who was not wearing a mask. [The Victim] had ample opportunity to identify [Appellant] by his face and tattoo during the five minutes that he was in close proximity to [Appellant] during the robbery.

Additionally, [the Victim's] identification was corroborated by [Appellant's] association with the gold-colored iPhone that had been stolen from [the Victim] during the robbery. When [the Victim] received a notification on his new iPhone that a person with the account "sb-demon215" was trying to connect with [the Victim's] phone, [the Victim] looked up the "sb-demon215" account name on Instagram and saw photographs of [Appellant], who he recognized as the person who robbed him. [Appellant] can be seen holding a gold-colored iPhone in the YouTube video featured on the same Instagram page. Photographs taken at the time of [Appellant's] arrest show that [Appellant] had an "S" tattoo on one hand and a "B" tattoo on the other hand, further establishing [Appellant's] connection to the "sb-demon215" account. Indeed, in the YouTube video, [Appellant] sits on a brick wall with the words "SB Demon" spray painted directly underneath him.

In light of the compelling evidence of [Appellant's] guilt, the verdict was not contrary to the weight of the evidence, and the court did not abuse its discretion in denying [Appellant's] post-sentence motion.

Trial Ct. Op., 3/7/25, at 7-9 (some formatting altered and internal citations omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. *See Windslowe*, 158 A.3d at 712. As the trial court noted, there was ample evidence that Appellant was the man who robbed the victim. Although Appellant claims that the victim's

testimony was not credible, we cannot substitute our judgment for that of the jury as trier of fact if supported by the record, which was free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. **See Spence**, 290 A.3d at 311. Here, the jury's conclusions were amply supported by the record. Therefore, Appellant is not entitled to relief on his weight-of-the-evidence claim.

### Sentencing

Appellant contends that the trial court abused its discretion when it imposed a sentence without considering statutory sentencing factors set forth in 42 Pa.C.S. § 9721(b). **See** Appellant's Brief at 19. Specifically, Appellant argues the trial court neglected to consider appropriately "the gravity of the violation, the extent of appellant's record, his prospect of rehabilitation, [and] an assessment of the mitigating and aggravating factors." **See id.** Accordingly, Appellant concludes that such a sentence is "manifestly excessive." **See id.** at 20-21.

Appellant's claim implicates the discretionary aspects of his sentence. **See Commonwealth v. Lee**, 876 A.2d 408, 411 (Pa. Super. 2005) (stating that "[i]t is well-settled that a claim that the sentence imposed by the trial court was manifestly excessive is a challenge to the discretionary aspects of the sentence" (citation omitted)).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Derry**, 150 A.3d 987,

991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms

which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, Appellant properly preserved his claims in his post-sentence motion, filed a timely notice of appeal, and included a Rule 2119(f) statement in his brief. ***See*** Appellant's Post Sentence Motion, 8/26/24, at 1-3 (unpaginated); Appellant's Brief at 9. Further, Appellant's claim raises a substantial question. ***See Commonwealth v. Shugars***, 895 A.2d 1270, 1274-75 (Pa. Super. 2006) (finding that allegations claiming the court failed to consider factors in Section 9721(b) and imposed a manifestly excessive sentence raises a substantial question); ***see also Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating "that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.").

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation [(PSI)].

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

**Raven**, 97 A.3d at 1253-54 (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on [the] victim and community, and [the] rehabilitative needs of the defendant[.]" **Commonwealth v. Fullin**, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in

- 14 -

question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Schutzues*, 54 A.3d 86, 99 (Pa. Super. 2012) (citations omitted).

Additionally, the trial court "must consider the sentencing guidelines." *Fullin*, 892 A.2d at 848 (citation omitted). However, "where the trial court is informed by a PSI [report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Edwards*, 194 A.3d 625, 638 (Pa. Super. 2018) (citation omitted and formatting altered).

The balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand. *See Commonwealth v. Kurtz*, 294 A.3d 509, 536 (Pa. Super. 2023), *appeal granted on other grounds*, 306 A.3d 1287 (Pa. 2023). In conducting appellate review, this Court "cannot reweigh sentencing factors and impose judgment in place of sentencing court where lower court was fully aware of all mitigating factors." *Id.* (citation omitted).

In the instant case, the trial court explained:

Here, the record reflects that the court properly considered and discussed each of the statutory sentencing factors set forth in Section 9721(b) and that the court explained on the record why consecutive sentences in the aggravated range were appropriate in this case. With regard to the protection of the public, the court stated in relevant part:

I find that the guidelines in this case do not adequately reflect the danger that [Appellant] poses to the community in light of his pattern of committing violent offenses before and after the violent crimes he committed in this case. He most recently was convicted of murder in the second degree, and that is not reflected in the sentencing guidelines.

I find that his criminal history, including the history I just described, reflect a higher risk of recidivism than similarly-situated defendants. [Appellant] committed a robbery in a way that is more serious than most robberies that come before this court in that not only did he rob the victim in this case, but then he forced the victim into a vehicle and kidnapped him and held a gun to his head and robbed him not only of his car but also of his cell phone.

Regarding the gravity of the offense as it relates to the impact on the life of the victim and the community, the court explained:

The Victim here not only suffered the trauma of being threatened and robbed of his car and cell phone, but he then endured the horror of being a kidnapping victim, being forced into the back seat of his car as [Appellant] held a gun to his head. This obviously has had a serious impact on the Victim and I recognize that the Victim in his statement has made clear that the Victim believes that [Appellant] deserves to be seen as someone worthy of forgiveness and it appears that the Victim has forgiven the [Appellant] for his crimes and the Victim is not himself advocating for a significant sentence of incarceration, in fact just the opposite.

However, I have to consider the potential that [Appellant] poses in terms of the danger he may pose to others in the community and the impact of his offenses on the community more broadly, including the fear that the community feels even more greatly based on [Appellant's] crimes, a fear of having— being carjacked, fear of being threatened with firearms and potentially kidnapped, as the Victim was in this case.

The court also explicitly addressed [Appellant's] rehabilitative needs, noting [Appellant] was diagnosed with bipolar disorder, [Appellant's] need for psychotherapy and psychotropic medications, and his need for anger management therapy. The

- 16 -

court concluded that [Appellant's] needs could be met most effectively while incarcerated, given [Appellant's] past failures while under supervision.

Thus, the record shows that the court properly weighed and considered each of the statutory sentencing factors in imposing [Appellant's] sentence.

[Appellant] further claims that the court abused its discretion by not assessing mitigating and aggravating factors when imposing [Appellant's] sentence. The record shows that [Appellant] is wrong.

The court explicitly discussed the evidence of mitigation at the sentencing hearing, stating:

> I've also considered all the information presented during today's sentencing hearing, including the evidence of mitigation that was described by defense counsel during his presentation as well as all of the evidence of mitigation reflected in the pre-sentence investigation [(PSI)] report and mental health evaluation.
>
> I've considered the fact that the [Appellant] is young and was young at the time of the crimes in this case and that as a person, a young person, I recognize that his brain is still developing at a young age relative to older individuals.
>
> I've considered his history, the financial hardships he faced growing up as a child, and other adversity he's faced.
>
> I've also considered the employable skills that he has from programs and training that he's participated in and the fact that he has prior work experience, including work at McDonald's.

Moreover, where the sentencing judge had the benefit of a pre-sentence report, as in this case, "it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors."

In explaining why consecutive sentences in the aggravated guidelines ranges were appropriate in this case, the court addressed a number of aggravating factors, stating as follows:

- 17 -

I do find that the evidence of aggravating factors do significantly outweigh the evidence of mitigation in this case, which is why my sentences will be in the aggravated guidelines range and also will be consecutive sentences.

The guidelines calculation reflects a prior record score of zero. I have taken that into account, but again, I find that the guidelines do not adequately reflect the danger that [Appellant] poses to the community based on his pattern of committing increasingly violent offenses between 2019 and 2021, including a conviction for murder in the second degree while on bail. His post-offense conduct demonstrates a significantly higher risk of recidivism than similarly-situated defendants. [Appellant] is a poor candidate for rehabilitation while on release, including for reasons related to his failure to succeed while being supervised in the past and also while on probation for prior conduct. I think other aggravating factors relate to the manner in which he committed the robbery in this case which goes beyond a typical robbery offense and subjected the victim to the higher potential for more extensive trauma and a greater level of fear by forcing the victim into a car and holding a gun to his head.

The court further explained that the nonsensical arguments and statements made by [Appellant] during his allocution raised further concerns about [Appellant's] low prospects for rehabilitation and the increased risk of danger that [Appellant] poses to the public in the future.

Trial Ct. Op., 3/7/25, at 11-14 (citations and headings omitted and some formatting altered).

After a careful review of the record, the parties' briefs, and the relevant law, we discern no abuse of discretion by the trial court. *See Kurtz*, 294 A.3d at 536. The record reflects that the trial court fashioned an individualized sentence after considering all the required statutory factors and reviewing the PSI report. *See* N.T. 8/16/24 at 17-23; *Kurtz*, 294 A.3d at 536; *Raven*, 97

A.3d at 1253-54; *Fullin*, 892 A.2d at 847.  Accordingly, we affirm Appellant's judgment of sentence.  *See Kurtz*, 294 A.3d at 536.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/13/2026